v. Joe Wetch. It's a case in which we issued an opinion in August of 2017, but the Supreme Court has remanded it with instructions to consider whether its more recent decision in a case called Janus should affect our prior decision. And so we've asked the council to, and they have provided some help on that question and we'll hear more today. So Mr. Fleck. Thank you your honor and may it please the court. Janus makes two points clear that are necessary to showing why this court's previous decision in this case can no longer stand. First, Janus demonstrates that the freedom of association standard, the standard of scrutiny that's applicable here, is the exacting scrutiny standard which requires that before Mr. Fleck can be compelled to join the State Bar Association, the state must demonstrate that there is no substantially less restrictive method for it to attain its compelling government interest. And second, Janus makes clear that the consent that the state must obtain from attorneys must be clear, affirmative, and prior to any attempt to collect the dues from attorneys. Now on that, it's that second point I'd like to start out with because it seems to be the main focus of a lot of the briefing here and that's this question about the opt-in versus opt-out standard on the dues form that attorneys are required to fill out. Janus makes clear that the opt-in to be constitutionally valid means that the form an attorney is signing amounts to a waiver of First Amendment rights and therefore the consent must satisfy the standard that applies to the waiver of constitutional rights and that means the government bears the burden of proving by clear and convincing evidence that the person knowingly and intelligently is waiving the constitutional right. And the form that SBAN uses fails to accomplish this. It begins with, in prominent print, annual license fee, $380. Have you conceded that the form itself is not confusing, that it's straightforward? No Your Honor, I don't believe that I have conceded that. Our view is that the form itself is confusing because it begins, it's inherently confusing to start out with the presumption that a person is willing to waive constitutional rights unless that person takes a step back, undertakes the effort to dissociate himself, which inherently fails the constitutional standard after Janus. This form begins with the $380 presumption that you are willing to acquiesce in the non-chargeable expenses and requires you to take a step back and as a result, inadvertence could result in the waiver. Inadvertence or failure to read carefully could result in the charge and that fails to satisfy the state's obligation to prove by clear and convincing evidence that the person knowingly and intelligently chose to waive that right. The second thing that Janus requires here is that the consent be affirmative. That is, that it not be passive or negative. This form fails to accomplish that because it presumes the person is willing to say yes, willing to participate, willing to join, unless that person takes the step back. It forces a person to dissociate and that means it presumes association in violation of the Janus rule. And thirdly, Janus requires that the consent be obtained prior to an attempt to collect money and prior to means not after and not simultaneous with. This form fails to accomplish. You yourself said that the form, the form had, the way you stated the problem initially implicitly can presume that you can, you can comply with Janus in the form you file along with your payment. I'm not sure I quite understand Your Honor's point. Well this prior to, you're saying there has to be a two-step procedure? Yes, Your Honor, that's right. That's ridiculous. I don't think it is, Your Ridiculous. Well, the Supreme Court doesn't do ridiculous things like that. I agree. And it's not in the, it's not in Janus. Janus requires that the consent be prior to and prior to means before. It cannot mean simultaneous with or after. Where do you get that? Because that's just what the word- Prior to, prior to must, must categorically mean before and not contemporary. That's simply the meaning of the word, Your Honor, and it's not particularly burdensome on the state. Any citation for that from dictionary or Supreme Court? Yes, Your Honor. I would cite to the dictionary, although I don't have that citation present. But the, this is not a particularly burdensome thing for the state to accomplish. The state, for example, if it sends a bill by email, you hit a click-through button, and then it sends you to PayPal, and you hit the button to pay your dues, that would be a two-step process. It would be a very simple matter for the state to accomplish. The state could, in fact, satisfy this two-step process with an addition rule that says your basic dues are such and such, and if you wish to also consent to contributing to our funds- I didn't mean to make you linger on your weakest point, so I'll let you respond, answer my question. Yes, Your Honor. My point here is that an addition process would satisfy this two-step requirement. So you're going to linger anyway? No, Your Honor. I wanted to finish my point. The point here is a simple baseline point. The question is where do we draw the baseline? The baseline after Janus must be that the person is presumed not to agree, not to consent, unless that person takes a step and demonstrates by clear and convincing evidence that the person is willing to join and participate. And those three elements of Janus contribute to that main point. The reason why SBAN must lose here is because it draws the baseline at a person's acquiescence, a person's willing to participate until that person takes a step back because of the presumption that applies here. So you're saying the presumption is on the form because you have to agree that it's an affirmative act whatever you write out your check for. Oh, certainly. It's an affirmative act to be an attorney. But that's not what Janus requires. Well, an affirmative act in what you are paying and what you are agreeing to pay. Once you have chosen what amount is applicable and then you fill out the check, of course writing out a check is an affirmative act. But it's not what Janus is contemplating when it refers to an affirmative act. The affirmative act Janus refers to is your choice to participate, your choice to waive your right not to participate. Now, you understand that Janus was dealing with nonmembers. Yes, Your Honor. And all of this was saying about that had to be, this was when you have to get consent from nonmembers. Here we are dealing with members. Yes, that's right, Your Honor. Well, the process is inevitably going to be different. Well, certainly. And the obligation to reach out separately to get consent in the union nonmember situation is not. Well, Your Honor, if I'm not, that's not the same relationship you have here. Well, Your Honor, it's true that Janus dealt with unions and this case deals with lawyers. And so there are going to be differences. With nonmembers. That was the point. I wasn't, I didn't care. This is dealing with nonmembers and dealing with members is inherently different. Certainly, Your Honor. But the point is that even under the present law, even under Keller, for example, that requirement is already applicable. The bar is already required to ask member or ask attorneys first before it proceeds in that case to spend the money on political activities. So this is not really imposing a severe burden on the state bars. And it's not going further than Janus's principles apply. Janus, it's of course true that there are going to be differences between attorneys and unions, but the principles of Janus with regard to opt in, opt out, and to the waiver of constitutional rights also apply here. Now, talking briefly about the mandatory membership requirement. Once again, the requirement here is exacting scrutiny. The government cannot compel membership unless it can prove that it cannot attain its. What's the case you rely on for that? Well, Your Honor, Janus specifically held. Janus did not deal with the membership issue. No, but it said that any restriction on associational freedoms must satisfy the exacting scrutiny requirement. And compelling a person to join a bar association as a condition of practicing law means an imposition on a person's associational freedoms. And the fact. You're taking Dick, it wasn't Dick, the introductory paragraph from Janus that repeated a similar paragraph in Harris and Knox. None of those cases involve the membership, not a subsidization. They all involve subsidization questions. Yes, that is true, Your Honor. All right. So the membership Vailnon issue is different. Of course, it's different. But the point here is that the principles. And a number of justices in Lathrop thought it was conclusively different. That's true. At a time when. What do we have that goes away from that? The fact that Janus has made clear that exacting scrutiny is the standard of scrutiny that's applicable here, whereas. Subsidization questions. It also, it applies to freedom of association. That's what Janus says. And that is said in all of the freedom of association cases that have been decided recently. Hurley, for example. You're familiar with the last paragraph in Keller. I am, Your Honor. That says that this question has been reserved. Keller says we don't decide. That's correct. And Lathrop did address this question. The plurality decision, Lathrop did address this question, but it did so under rational basis scrutiny. It said. But wait, our question. The question for us is, does Janus require us to ignore your prior concession that Keller applied and somehow revisit the issue? And how can we do that without. We got to construe that last paragraph in Keller as being something other than what it said. We haven't, we aren't considering this issue. No, Your Honor. Therefore, Janus didn't. I'm sorry, Your Honor. I'm saying that the last paragraph in Keller does, is part of our position, which is that this is an open question. It was addressed by the plurality in Lathrop under rational basis scrutiny. Janus makes clear that that is no longer the applicable basis, standard of scrutiny. But if Keller left it open, what is the meaning of the remand to us? To determine. That's what you should be talking about. To determine whether. You're making the argument as though the Supreme Court had granted cert and you got to re-argue Keller in front of the Supreme Court. That's not where we are today. Certainly, Your Honor. I've moved on to my second point. I know it. With addresses. I'm talking about your second point. Okay. Well, I'm not sure I understand Your Honor's question. Arguing the merits of Keller. No, Your Honor. My position. What I'm trying to. Forgive me, Your Honor. Let me. Scrutiny is required for the membership question. And it's for the question in front that the Supreme Court expressly stated it was not decided. Forgive me. I did not mean to interrupt. That's arguing the merits of whether Keller should be modified or overruled, which only the Supreme Court can do. Yes, Your Honor. Keller left this question open. If this court believes that the question is controlled by Keller, of course, the court must follow Keller. And that's the case closed. What do you envision our revised opinion on the second issue would say? That Keller did not address this question. After Janus, it is plain that the standard of scrutiny that's applicable is this exacting scrutiny standard. Therefore, Lathrop cannot control here. And the government bears the burden of proving that it cannot attain its compelling government interests by any substantially less restrictive alternative. And the fact that 20 states. Therefore, you haven't told me what my last sentence is. And the fact that 20 states already regulate the practice of law without engaging in this kind of infringement on associational freedoms is dispositive of the question. I've got to have a disposition. You haven't told me what the disposition is. You've just told me what you want the final answer to be. The disposition would be reversal of the district court's opinion. What are we doing? And therefore, we what? Reverse the district court's opinion that it previously affirmed. And now we get to the crunch. And judgment for Mr. Keller. I mean, sorry, Mr. Fletch. I thought you were going to say you were going to have us do exacting scrutiny with no record. Well, Your Honor, the record is. There is a record before this court. That record is sufficient to demonstrate. When a different legal standard applied. The record is sufficient to demonstrate that there are substantially less restrictive methods by which the state can attain its objectives. I'm sorry, Your Honor. I'd like to just say that because so saying it makes it so. The record doesn't establish that. That's your position. It's been argued. But there's been there's been no countervailing assessment of assessment. There's been no assessment of countervailing facts. I don't think I understand Your Honor's question. But I'd like to reserve what I know. I want to know how we could and your view of a perfect word. We could do anything but remand. The court has before it the question of whether Keller controls on this question for Agostini purposes. If it holds that it does, then it simply repeats what it said previously. If it holds that it does not, then the question is, has the state demonstrated that beyond or I mean by the applicable standard of scrutiny that it cannot attain its compelling interest in a less restrictive way? And if the court finds that that burden has failed, has not been demonstrated here, it then remains to the district court for fact finding on that question and so forth. But that's the question before this court. Did your pleading in the district court raise a complaint about joining the association separate from funding it? Yes, Your Honor. We raised both questions of association and the funding question. Well, the funding is association too, I assume. Yes, that is true. They certainly overlap. But what other objection do you have to the funding other than association? Association is a right in and of itself. Being required to be a member of the bar and SBAN calls itself the state's official representative of the legal profession. I'm just saying that your challenge to the funding must also be a claim that it breaches your right of association. Yes, that does also reach the right of association. But your brief seemed to talk about joining and funding together. And those are two separate conditions. I mean, when you're forced to be, when you are a member. I know. I'm just wondering if you've switched entirely your position on Keller and Lathrop. I'm trying to understand why you're also switching entirely your position on whether joining and funding go together or whether they're separate claims. They are separate claims, Your Honor. What about the record? If I go back and look in the district court, what's it going to show about whether it was? Well, on the question of being, the question of being compelled to join an association, we said at the beginning that Keller presently controls here. Our position is that Janus has changed the underlying law to such a degree that this court must, under Agostini, determine whether Keller is still, is indeed the controlling applicable law. If it is, again, we lose on that point. You're sticking with your concession that Keller was controlling before. That's right. Under that position, then certainly the judgment would have to remain the same. So I'm asking whether you're sticking with your concession that Keller was controlling before Janus. No, Your Honor. I don't believe that Keller was controlling before Janus. So you're abandoning your prior position on that? No, Your Honor. We said Keller was then controlling, but as a result of, I'm sorry, I've been a bit befuddled by Your Honor's question. Forgive me. What did you, could you? Well, I think you just, you've switched two or three times here. You said in your original papers that Keller was controlling on this issue. Yes, Your Honor. We did say that. Keller was controlling at that time. Now Janus has undermined the foundations of that, and we should analyze it under Agostini. That's right. So then I asked, are you sticking with your view that before Janus was decided, Keller was controlling? Forgive me, Your Honor. The answer to that question is yes. I'm sorry to have been confused. So you're saying before Janus was decided, Keller was binding on this court. That was our position at that time. It's still your position that looking back. Now, counting, of course, the fact that this court cannot be bound by a legal concession of that sort. This court has an obligation to interpret the law on its own, and of the cases that we've cited in the briefs. You're the plaintiff, I mean. You're the plaintiff, but we've said that when the government concedes things in criminal cases and the like. But you're the plaintiff bringing this action, and you're telling us we're not asking you to do anything on the Joinder claim because Keller is controlling. You're saying we should ignore that and advocate on your behalf some other position? Certainly not, Your Honor. Before Janus? Our position is that this court is not bound by a legal concession of that sort. Now, it is true that we stated that. Well, it's the law of the case. Let's put it that way. OK, Your Honor. Could be. Could be the law of the case. I was just trying to understand whether you could consider that question. Pardon me? I hadn't considered that. The point is that Keller, this court after Janus, is required to determine whether Keller controls. And if it controls, then, of course, it moves as it did before. But you see, it's a lot different whether we're doing an Agostini analysis starting from the premise that Keller was binding before, or whether we're starting from scratch and just taking this from the beginning as though we have to decide whether Keller even applies. That's why I was trying to find out whether you're saying And I think what you're telling me is your position was and is that before Janus, Keller was controlling. Yes, Your Honor. That was our position. And now you want us to say, in light of Janus, Keller is no longer controlling. That's exactly right, Your Honor. OK. Thank you, Your Honor. I apologize for going over time. Your cert petition eliminates any waiver. Your Honor, you petitioned for certiorari review of the Keller decision. Cert would not be denied because you didn't argue that to a panel of the Eighth Circuit, which ruled that Keller was controlling. You can take on certiorari to the Supreme Court an issue that the Circuit Court panel considered to bound. Yes, Your Honor. So I don't understand the state's waiver position. You petitioned for cert on the Keller issue. That's right. Plus the opt-in issue. That's right, Your Honor. And the Supreme Court did not deny cert.  That's right, Your Honor. I don't think waiver's an issue because of, well, there's no argument that you were precluded, that cert had to be denied on the Keller issue because of the position you took before our panel in the Eighth Circuit. Well, you can always argue to overrule, the Supreme Court to overrule a case that you think is binding on the Court of Appeals. That's right, Your Honor. And that's what you argued. And the Supreme Court's response was to send it back to us. That's right, Your Honor. And now the state says, well, we can't do anything on remand because of your prior waiver. I think that's a nonstarter. I agree, Your Honor. I think it doesn't make sense because of what I've said before, that Janus does substantially alter the background on which Keller was based, which was that at the time Keller, referring to Lathrop, says that the proper standard of scrutiny for the associational concerns that were raised but not decided in that case is rational basis review, that the state could have reasonably believed that forcing lawyers to join the Bar Association would advance its compelling interest. That's got an Agostini problem if you're saying that Keller was binding before Janus. I agree, Your Honor. I agree that it does raise a concern in that regard. Forgive me if I failed to articulate that, but that is our position. Apologize for going over time, Your Honor. Well, no, it's our fault. Mr. Bakke? Good afternoon, Justices of the Eighth Circuit Court of Appeals. I'm Randy Bakke, and I represent the State Bar Association of North Dakota and related officers. We call the State Bar Association of North Dakota SBAND, and the United States Supreme Court decision in Janus has no effect on this case, but let me start out by discussing some of the fundamental flaws in Mr. Fleck's position. It was interesting for me to hear that they say Ardu's notice is not Keller compliant. In fact, in this case, Judge Hovland, the district court judge required the parties to be involved in preparing the dues notice for SBAND and to prepare the Keller policy. And so Mr. Fleck's attorneys were involved, not Mr. Sandefur because he wasn't involved in the case at that time, but they helped prepare Ardu's notice to make sure it was Keller compliant. They helped prepare the Keller policy language, and they approved it. But his argument wasn't that the form isn't Keller compliant. It's that it's not Janus compliant. I think what he said was the form is confusing. And he said a lot of things. It has it, but he said it contains a presumption that is unconstitutional under Janus. You want it to require them to take the money out because the inertia factor will get you more money, right, if people don't subtract something. Well, and so the question is whether that's also a constitutional, whether that's a constitutional problem or whether the fact that the person has the choice to reduce and send the check for the lesser amount is satisfactory. I don't think it is a concern, and this court already determined in its prior decision that we had an opt-in procedure which was compliant. Now, the Janus decision does not require an opt-in procedure. All right, well, that's the question. We didn't say it was compliant with Janus, so go ahead. Go ahead and address that. Sure. Yeah, the opt-in procedure which was previously addressed by this court where the court said we have an opt-in procedure is constitutional and preserves the First Amendment rights. Janus didn't address in any way that there's a requirement for opt-in. It doesn't say that. What this boils down to is they don't like our opt-in procedure. Wait a minute. It said that there has to be affirmative consent. Now, I can't think of more parallel or equal language than opt-in and affirmative consent. I totally agree. They're synonymous. Okay. Well, so Janus does require affirmative consent, which stated another way is an opt-in procedure. Which we characterized your present form as being. The question is, is it good enough under Janus' affirmative consent requirements? And I think it is. And here's the reason why. And I think the court's prior decision that this was opt-in that has clear affirmative conduct and prior notice is in November of each year, the notice goes out to the attorneys. And so in terms of this not being prior to them renewing their license, that's simply not true. They have over 30 days to look at the form to read the Keller policy, which was provided with each dues notice. So this is clearly affirmative consent. And bear in mind here, there's some other significant differences between our situation and the Janus case. That case was a public union case only involving compelled fees. We have no compelled fees. We don't compel. This is not a situation where there's an employer, an employee. This is not a collective bargaining situation. We take a very small percent for non-germane expenses, less than 3% for those individuals who elect affirmatively to pay that amount. And when they write that check, they make an affirmative decision just like they do on our form. If they want to contribute to the pro bono fund, if they want to contribute to the North Dakota Bar Foundation, if they want to be a member of any of the committees, those are all things that are going to affect that final number that gets written on the sheet. Why not have them add in instead of subtract out? Isn't that kind of the nub of their concern? I think that is the nub of their concern, but they have not cited to a single case anywhere, let alone U.S. Supreme Court precedent, that requires a specific methodology for how opt-in works. There is no case that requires that. And there's two paragraphs in part seven of Janus, and they get pretty specific. But in Janus, once again, that's a compelled fee situation. We do not have a compelled fee situation. This is strictly voluntary. You don't have to pay. Wait, the membership, the core dues are compelled fee, if you want to be a lawyer. Well, in fact, it doesn't get paid to us. It gets paid to the North Dakota Board of Law Examiners. It's an integrated bar, right? That means that the license and the membership are integrated. Right, but the activities that are done, there's a separation there. I understand what you're saying is not a compelled fee. That's correct. But the payment the lawyer is making is a compelled fee. Except for the question was asked by Justice Culleton, did he, in fact, in this case, request to pay the fee, but not associate? And he said he thought he did that. He did not do that. In fact, that fee gets paid in full to the North Dakota Board of Law Examiners. And then after that, they allocate funds to us for regulatory function. Well, I think it's... If he asked not to associate, you'd have said, well, you'd have said no or referred it to the Supreme Court for removal from the attorney roles. Yeah, I think what I would have said in response to that question would be that we have binding precedent. And when we talk about an exacting scrutiny standard, the Harris v. Quinn case, which very specifically reaffirmed Keller and Lathrop is an exacting scrutiny case. And so we're not conceding exacting scrutiny applies. But this issue has already been through exacting scrutiny in the Harris v. Quinn case, where they specifically found that bar dues are allowable so long as it's for the regulation of the practice of law and in order to improve the quality of legal services. They also said in Harris v. Quinn, states have a strong interest in having the lawyers pay costs to enforce lawyer ethical rules, not the public. And the specific words that they used in Harris v. Quinn, applying the exacting scrutiny standard... Your position today is that Judge Hovland conducted exacting scrutiny? I'm not saying that Judge Hovland did exacting scrutiny. What I'm saying here is... Harris has already covered this issue. Because Harris is an exacting scrutiny case, just like Janus is. Harris is what they're relying on to ask us to change our prior position in light of Janus. I understand they're... Which confirmed that exacting scrutiny is the standard for some, if not all, First Amendment Association issues. Right. And exacting scrutiny was applied in Janus, but the Supreme Court did not indicate exacting scrutiny applies to bar associations. And there's some significant differences there, why they may determine it's not exacting scrutiny. My only point is, the very case they... Didn't they cite JCs? I'm sorry?  other than Keller and Lathrop? Keller and Lathrop were not cited anywhere in the Janus decision. Except for the dissent. Correct. I don't understand your argument. You're somehow saying because the Supreme Court has applied exacting scrutiny in four or five different positions and reaffirmed that that's often a controlling standard, that somehow that means what? I think what it means, and this is a simple point, is that if you look at the Janus decision, they cited to Harris v. Quinn over 35 times. It's on almost every page. But yet they never said that Harris v. Quinn is overruled. They never said that even in that case where exacting scrutiny was applied... Okay, I agree with that. Where does that take us? I think that... Nowhere. No, I think that takes us to the Agostini analysis. What's the Agostini analysis? The Agostini analysis here is, we have three cases of binding precedent, specifically allowing integrated bars. Those three cases are the Lathrop case, the Keller case, and the Harris case. Okay, I didn't know that was what you meant. Sure. And so the Supreme Court has not said... But none of those three cases address the membership issue other than in a funding or subsidized funding context. Well, except for Keller did give examples of things that are permissible as non-political, non-ideological. And they also gave examples of things that would be considered political and ideology situations. But we ignore the last paragraph in Keller. No, I'm not saying... What we're not deciding. No, I'm not saying you ignore that. But I think there's a significant difference between labor unions. What ESPAN does is we regulate. We regulate lawyer conduct. We regulate ethical rules. We regulate lawyer... The exacting scrutiny always depends upon what you're scrutinizing. I understand that. And that's why the cases say it's context-related. The court has to look at the context of the situation, which in this case is a bar association that doesn't get compelled fees. We regulate. And that's what we do. And we do things to improve. Do you concede that neither Lathrop nor the prior decisions in this case have conducted exacting scrutiny of the membership issue? It's unclear to us what the level of scrutiny was in Keller and what it was in... I didn't say Keller. I said Lathrop and this case. In Lathrop, I don't know precisely what the standard... Whatever it was, we think it's... You haven't read that Justice Brennan's long dissertation of the balancing of interests he conducted? I have, Your Honor. You never saw the word scrutiny in there, did you? I did not, Your Honor. They didn't see the word exacting or strict. No, and that's why I say I don't... What you basically saw in substance is the Wisconsin Supreme Court and legislature acted reasonably. Right. I mean, in today's vernacular, rational basis review. In that case, that holding has been tested once again in Keller, once again in Harris v. Quinn. It was not tested in Keller. It was on the funding issue. Correct. It was not on the membership issue, the compelled speech issue. Right. But Janus involves compelled speech, not freedom of association. And that's a significant difference between Janus and I... No, compelled speech is the freedom of association. There's a membership compulsion and there's a funding compulsion. I understand. They are, as a practical matter, they're different. It may or may not be subject to different First Amendment analysis. Right. Our point is we don't restrict speech of any lawyers in any way, shape, or form. You compel... For purposes of regulation and improving the quality of legal services. That every time SBAN takes a public position, it is implicitly, the First Amendment argument is, that is implicitly the position of every member of the association. And this is a compelled membership. And therefore, I'm being compelled to have stated in my name political views I disagree with. And when we do that, we comply with the Hudson factors. And we go beyond Hudson. That's the funding side of it. Well, that's also the side of it in terms of the notice, because under Hudson, one of the things... But Hudson and Knox, they're all funding questions. These people can't opt out of being members at all. They can only opt out of paying additional amounts, right? For the ideological speech. To my knowledge, there's never been a situation where someone has asked to opt out of the association. But I think that's what they're saying now. We want to opt out of the association. We don't want to be compelled to join it. Now, whether they've properly raised it, I've got to go back and look. But they could say, for example, we don't want to be a member. We're willing to pay the dues if it's necessary for the CLE Commission and so forth. But we don't want to be compelled to be members of this bar association that then is going to go lobby on causes that we disagree with. Yeah. Now, what about that? What about that concern? Well, with all due respect to Mr. Sandefur, it's kind of a moving target here. So that is not part of the record. But in terms of the association issue, at present, the way the system is set up since 1921, so almost 100 years through the legislature, and these are statutes both for the North Dakota Board of Law Examiners and for SBAND. The procedure is, in their wisdom, for a small state with us, with small resources, small funding, what they have determined fits best is for the money to go to the North Dakota Board of Law Examiner. And then from there, we get part of that money, $75 for lawyer discipline. Part of it goes into a client protection fund. All of these things are regulation and in the interest of law. So in terms of- But couldn't you do all that without deeming everybody in the state to be a member of your association? I don't know whether that's possible or not. I think it would be extremely difficult in its law constitution. If we go through the analysis under exacting scrutiny, as I understand it, it's always the question of, are you using the least restrictive means to achieve the compelling state interest? Now, this discussion and the briefs all assume that the either or is mandatory or non-mandatory bar. That strikes me as absurd on its face. One restriction is, if you're going to have a mandatory bar, it may not take political positions. So your option would be the California option, as it's been described in the amicus briefs. All of these things would be live game if Janice requires a reconsideration of Keller, of the issue, a consideration of the issue that Keller expressly did not address. Right? I would say two things in response to that. One, I would say under Keller, they have said, and then once again in Harris v. Quinn, that they believe the state has an interest in regulating lawyers and not passing that cost onto the public, that the lawyers should regulate themselves. So that's why it's significantly different, because there's ethical rules and there's other things. The second thing I would say is that the standard that was set forth in the Janice case was not the least restrictive method. That's what they're arguing. They argue in their brief that it should be the least restrictive. What Janice said is significantly less restrictive, which is a different standard than the least restrictive. Yeah, okay. So take my hypothetical, the question wouldn't be least. Is there a substantially less restrictive way to do this? No, we don't believe there is. No, you don't. But the argument could be not either go mandatory or not, either go voluntary or stop being politician, stop your political activities. And we separate... Which in either case, the Bar Association can continue to collect from its members the money that's needed to achieve the compelling state interest of regulating and supervising the bar. I understand the argument, but the reality is we really are not involved in political... The question I see is whether that argument is... Whether the Supreme Court by remanding has put that argument on the table. I don't think they... You're just assuming... You're just... You both sides today are just going right to the merits of the argument. Well, I'm looking at the Janice case and looking at it and see whether or not there's anything that would affect integrated bars. And there's nothing in there that affects integrated bars. We have three cases of controlling precedent and under Angostini, in all due respect to the court, that decision as to whether they're going to reverse those three cases of significant precedent should in all due respect be done by them. But the question... Since they aren't controlling on their face, what bothers me is when the Supreme Court is urged to use Janice, a union case, as a vehicle to grant this cert petition and also consider Keller. And they decide the Janice issue. And that's the opt-in, opt-out issue we've got. But they don't stop there. They vacate and remand. And does that tell us that as I read Keller, Lathrop, and Janice, it's not really... Keller is not really controlling. It's been treated by everybody as controlling. But that's just because the way people have read it. And the Supreme Court and Keller said, that's a whole issue that wasn't taken up before the California Supreme Court. And you raise it to us and we're not going to be the first ones to go there. Now, are they telling us, go be the first ones to go there? Or are they telling this court that they want a Circuit Court of Appeals to apply Keller and say, Keller, Harris, Lathrop are still valid law. There are significant state interests. Then they could have just vacated and remanded on the opt-in issue and denied cert on the other issue. Sure. And it's difficult to read the tea leaves. But that's what we got to do. Sure, I understand. Let me ask you a question about, is this your form? Yes. Our form, page 348 of the appendix, is that your form? It's 348, the joint appendix. Where does the $380 come in? Is that only in the explanatory materials that are attached where it says, if you have five years of practice, you pay 380? So it's never listed on this form that the lawyer signs? Correct. Yeah, it's a sliding scale depending upon how many years you've been practicing. I know that, but I'm asking why, I'm wondering why it isn't just listed right on the statement of license fees due. But you have to read the backup materials to get your base amount, huh? That's right, and it's been such a long-standing amount that basically all the lawyers know it. So you go to that, the way this works is you go to the backup papers, you say I've been five years or more practicing, I owe 380. Correct. Then you can add in, if you want to, a section or a bar foundation amount. Yes. Or you can do nothing there. And same with pro bono fund. And then if you don't want to pay for the political stuff, you subtract 1007. That's correct. Now, do you know why the bar has that set up as a subtraction as opposed to saying your dues are 369.93 and then have another opportunity to add something here? No, all I can say is that this was approved by Fleck and his counsel and was approved as part of the process. Because recall that in the beginning of this case, when it started, we were not Keller compliant and we conceded that. You mean Fleck actually signed off on this as part of a settlement agreement? No, it can't be. There's a lawsuit. What do you mean Fleck agreed to it? What happened was when this lawsuit started, we did not have a Keller policy at all. And when they brought this lawsuit, very early in the case, Judge Hovland said, let's see if we can resolve this issue. You aren't Keller compliant. We're going to rule against the Bar Association and the Board of Law Examiners. Let's see if we can get this resolved. And the result of that was that this form was developed jointly by the attorneys for Mr. Fleck and by... I don't know what you mean by jointly because he sued then on the ground that this form is not compliant. I mean, you didn't get a stipulation from him that it complied with the First Amendment, apparently, or you would have... He agreed in both the district court level and it's part of Judge Hovland's decision that we are Keller compliant and they concede that. Oh, I see. You mean he took that position and just argued, I'm going to ask the Supreme Court... That's right, because he was involved in preparing the form through his attorneys. It hasn't really been... We did red line versions and they went back and forth with language until everybody agreed we were Keller. It was not a fighting issue at the time of the final order as the district court. It had been... This process. That's correct. By the time Judge Hovland entered his summary judgment order in this case, that was a completely resolved issue. We did that very early in the case. What was a resolved issue? The form? That we were Keller compliant. Even the opt-in, opt-out point? Yes. Yes, exactly. They approved this very language in this case. We had red line versions of the Keller policy and the dues notice... They brought it up on appeal. Yeah. How did that happen? Our panel did not rule that this has been waived in the district. I don't remember the first time around that you said they stipulated that this form was compliant. It wasn't an issue at that point. Now they've reversed their position. No, no. On the first appeal, they were arguing this is an impermissible opt-out. I think their position has always been... Yes, you're right, that they claimed this was an impermissible opt-out, but the reality of the situation is they were involved in the process. I'm happy to continue answering questions, but... That was the last four pages of our panel decision was the opt-out issue argued on the basis of Knox. I agree, yeah. I just don't remember you saying, hey, they agreed that this form complied with the opt-out. And I've gone through the hearing transcript before and I did not say that, but that is what happened. It is what happened. But Mr. Nikolai, who represents the North Dakota Bar of Law Examiners reserved three minutes, but I now used his time. I don't know what the court's thoughts. Has he used the joint time? Or did you split it up? I like him, the joint. I split it. I'll give Mr. Nikolai two minutes. Mr. Sandifer was over by five. Thank you, Your Honor. Mr. Bakke is over by 11. I can't hear you. Did you... The time up here was supposed to be their total 15 minutes. They had 12 and three. Pull the microphone down. They had 12 and three. No, we don't do it that way. They have 15. They get to split it up. How many minutes did he use? Mr. Bakke has used 13 minutes.  Then there's two left. Okay. Thank you, Your Honor. May it please the court. Opposing counsel. I'm Jim Nikolai. I represent Penny Miller and the State Board of Law Examiners. And I guess I'd just like to jump right to the funding side of this is the only issue for my client. If there's some distinction between the funding and the subsidization cases and a separate issue with association, we are only involved in funding pursuant to statute. And so from that standpoint, we believe that Keller does control and we can look at what the Supreme Court itself  and how the Supreme Court itself characterized. So what we've been calling the opt-in issue, do you think Keller is still controlling? No, I think Keller controls with respect to the funding, the subsidization as opposed to the last paragraph that. The attack on that is that the subsidy is still unconstitutional because the consent is not validly obtained. Right, but we. I don't understand funding issue versus that issue. Our client is not involved in the form. Our client is involved in pursuant to statute providing money to a regulatory agency from the state standpoint that performs regulatory services for the state. And Keller, what the Supreme Court itself characterized as Keller's holding is in Paris, Quinn, they said, in Keller, we held that members of this bar could not be required to pay the portion of the bar dues used for political or ideological purposes, but that they could be required to pay the portion of the dues used for activities connected with proposing ethical codes and disciplining bar members. That is what the State Board of Law Examiners role is in this. Pursuant to statute, we fund SBAND. We don't engage in speech. We neither require nor prohibit SBAND from engaging in speech. We simply fund pursuant to statute. And I think it's a fair question for Mr. Sandifer when he gets back up here is what part of the statutory scheme, from the standpoint that I'm defending North Dakota's statutory scheme, what part of the statutory scheme deals with compelled membership in SBAND? The statutory scheme deals with funding. And we believe that Keller controls, but we also believe that Janus did not change anything about the actual holding of Keller. That last paragraph that Judge Loken you referred to in Keller was in Keller before Janus. It's in Keller after Janus. So the question is there's a distinction between whether Janus changed anything about the holding of Keller or whether it undermined some of Keller's reasoning. But that's an important distinction with respect to the concession that Mr. Fleck made as it affects my client. This case would have looked- If that's right, it seems to me the Supreme Court's order would have been cert denied. Well- That it could not have thought the impact of Janus on this cert petition was zero. I see my time's up, Your Honor. May I answer? No, because I'm not quite sure. I understand the difference between the appellees and the statute versus the Supreme Court and the Bar Association processes. But I'm not sure how that affects our resolution of the Supreme Court's remand. Well, again, I'll echo what Mr. Bakke said. I don't think you can read anything into the tea leaves of what happened. I mean, this was conferenced eight times. And one of the arguments that we made was- This cert petition. Yes. That's very telling. One of the arguments we made was that one of the choices the Supreme Court had was to send this back down because none of the circuits or no district courts had yet addressed whether Janus would have an impact on the Keller line of cases. And I think it's telling. We concede that Keller and Lathrop don't specifically refer to exacting scrutiny, but Harris v. Quinn was an exacting scrutiny case. And the Supreme Court said that they applied exacting scrutiny and still distinguished Keller, which I think at least implicitly says that if exacting scrutiny had been applied in Keller, it would have survived that scrutiny. And I don't think this court can ignore what was said in Harris v. Quinn. It sounds like cert denied to me, but I think I understand where. I see my time is up. If the court has any other questions, I can entertain them, but otherwise we'd stand on our brief.  The supplemental briefs were very helpful. Thank you, Your Honor. As have the lawyers all along. Is there any time for rebuttal? No, okay. Well, I think the issues have been fairly brief and argued. The case is complex and important and we'll take it under advisement. The court, let's see, the court will be in recess.